[Cite as *State v. Kerr*, **2014-Ohio-5455.**]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                          Court of Appeals No. WD-13-047

    Appellee/Cross-Appellant                   Trial Court No. 2012-CR-0389

v.

Jeremy L. Kerr                                      **DECISION AND JUDGMENT**

    Appellant/Cross-Appellee                   Decided:  December 12, 2014

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, Thomas A.
Matuszak and David T. Harold, Assistant Prosecuting Attorneys,
for appellee/cross-appellant.

Mark D. Tolles, for appellant/cross-appellee.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} This is an appeal[1] from a judgment of the Wood County Court of Common

Pleas which sentenced defendant-appellant, Jeremy L. Kerr, to a total of seven years and

eight months in prison following a jury verdict that found him guilty of four counts of

forgery and four counts of tampering with evidence.  Kerr now challenges that judgment

through the following assignments of error:

---

[1] The state filed a notice of cross-appeal on July 10, 2013, but did not pursue it.
Accordingly, the cross-appeal is dismissed.

Assignment of Error No. 1.

The trial court erred in overruling defendant-appellant's motion for judgment of acquittal where there was no evidence presented that defendant-appellant had performed or committed any element of the offenses within the territorial jurisdiction and venue of the trial court.

Assignment of Error No. 2.

The trial court erred in overruling defendant-appellant's motion for judgment of acquittal where there was no evidence presented that any document had been uttered by defendant-appellant.

Assignment of Error No. 3.

The convictions of defendant-appellant were against the manifest weight of the evidence.

{¶ 2} On July 19, 2012, appellant was indicted and charged with the offenses stated above as a result of his attempt to remove judgment liens from real property he owned at 13345 Ash Street in Weston, Wood County, Ohio. The facts of the case, as testified to at the trial below, are as follows.

{¶ 3} In 2002, attorney Bradley Le Boeuf obtained a judgment in the Bowling Green Municipal Court against appellant and Kerr Construction for $4,445.25, plus court costs and interest, on behalf of Carter-Jones Lumber. That same year, Le Boeuf filed a certificate of judgment in Wood County which became a lien against appellant's real

2.

property in Wood County. Le Boeuf most recently renewed the lien in 2012, when the judgment was worth in excess of $8,000.

{¶ 4} In 2006, attorney William Jennings obtained a judgment in the Lucas County Court of Common Pleas against appellant for $31,471.16 on behalf of Larry Eilert. Jennings then filed judgment liens in both Wood and Lucas Counties against any and all real property owned by appellant in those counties.

{¶ 5} In 2010, attorney Cory Speweik obtained a judgment in the Bowling Green Municipal Court against appellant and Kerr Construction for $692 on behalf of ABCO Services, Inc. As a result of that judgment, Speweik filed a judgment lien in Wood County against real property owned by appellant.

{¶ 6} At some time prior to March 2012, appellant contacted Ruth Ann Kramer, a real estate agent with AA Green Realty in Wood County, for the purpose of listing the Ash Street property for sale. Subsequently, an offer was made on the property, which appellant accepted, and title work was initiated by Welles Bowen Title Agency on behalf of the buyer. The title search revealed five judgment liens that had been filed on the property, including the three listed above. Patricia Kost, of Welles Bowen Title Agency, contacted Kramer by email to inform her of the liens. Kramer in turn contacted appellant to discuss the liens. Kramer testified at the trial below that in conversations with appellant in late February or early March 2012, he acknowledged the liens and indicated that he was working on getting them paid and released. Kost also spoke with appellant

3.

about the liens. Kost testified that appellant told her he was working with his attorney to obtain releases of the liens.

{¶ 7} In mid-March 2012, appellant went to the Wood County Clerk of Courts and asked to see the liens that were recorded against him. Mary Benjamin, who worked in the clerk's office at that time, testified that she was working her rotation at that counter when appellant came into the office and asked to see the liens. Benjamin pulled the list of liens and gave appellant the case numbers associated with the judgments.

{¶ 8} On March 15, 2012, Kost received an email from appellant with the subject heading "Re. FYI!" Attached to that email were copies of several documents that purported to be releases of the judgment liens in the Larry Eilert, ABCO Services and Carter-Jones Lumber cases. The purported release in the Larry Eilert case references the case number and the judgment lien docket page where the lien is recorded, appears to be signed by attorney William Jennings, and appears to have been notarized on March 9, 2012, although the notary's signature and seal are illegible. The purported release in the ABCO Services case states the case number, appears to be signed by attorney Corey Speweik, and appears to have been notarized by Danielle Hineline (aka McCarthy) on March 13, 2012. The purported release in the Carter-Jones Lumber case includes the case number, appears to be signed by attorney Bradley Le Boeuf, and appears to have been notarized by Karen Brueggemeier on March 14, 2012.

{¶ 9} Kost testified at the trial below that releases are typically recorded following the closing of a real estate sale, and so, prior to the closing, she submits copies of releases

4.

to the Wood County Clerk of Courts to ascertain whether the form, as written, is acceptable for filing. Consistent with that practice, Kost forwarded the purported releases to Mary Benjamin at the Wood County Clerk of Courts. On March 19, 2012, Benjamin notified Kost that two of the three releases were proper as to form and that the originals would be acceptable for filing. Benjamin told Kost, however, that the release in the Carter-Jones Lumber case was not acceptable, as it was not properly worded. Kost then notified appellant that the Carter-Jones Lumber release would need to be rewritten.

{¶ 10} On March 20, 2012, Leigh Ann McKinney was working at the Huntington Bank on East Wooster Street, in Bowling Green, Wood County, Ohio. As part of her duties at the bank, McKinney was a notary public. McKinney testified that on that day, appellant entered the bank and asked her to notarize his signature on a document. McKinney stated that she always asks for identification before notarizing a document and only notarizes documents for people who are in her presence. Although she did not specifically recall the document appellant asked her to notarize, when shown a release purportedly signed by attorney Bradley Le Boeuf and notarized by McKinney on March 20, 2012, McKinney testified that although the signature is hers, she did not sign the document.

{¶ 11} On March 20, 2012, appellant provided Kost with a rewritten release in the Carter-Jones Lumber case. That release appears to again be signed by attorney Bradley Le Boeuf and appears to have been notarized by Leigh Ann McKinney on March 20,

5.

2012. Kost forwarded that release to Benjamin in the clerk's office, who notified Kost by return email that the original of the newly rewritten release would be acceptable for filing.

{¶ 12} As the date for the closing on the Ash Street property approached, Kost was reviewing the paperwork and realized there was a problem with the release in the Eilert case. Rather than contact appellant, Kost contacted attorney William Jennings, whose signature appeared on the release. Jennings told her that he had never signed a release of lien in the Eilert case. Kost then contacted attorneys Le Boeuf and Speweik. Le Boeuf also stated that he had never signed a release in the Carter-Jones Lumber case. Speweik did not respond to Kost's email. Kost further notified Kramer, appellant's real estate agent, about the releases. In response, Kramer confronted appellant and asked him if he had forged the releases. Appellant responded: "I'm not going there."

{¶ 13} Attorneys Le Boeuf, Jennings and Speweik all testified at the trial below. All three acknowledged that the signatures on the releases appeared to be theirs, but all three denied ever signing such releases. In addition, they testified that appellant would have had easy access to their signatures because of documents filed or correspondence in the cases in which they obtained the judgments. They also each testified that appellant never paid the judgments underlying the liens and that the form of the purported release used in each instance was not the form that each of them used. Attorney Le Boeuf testified that the releases that purport to release the judgment he obtained against appellant on behalf of Carter-Jones Lumber are forgeries and that the effect of filing a

6.

forged release would have been to frustrate his client's ability to collect the debt owed by appellant. Attorney Jennings testified that in May 2012, approximately two months after the releases at issue in this case were purportedly signed by the respective attorneys, appellant contacted Jennings to try to renegotiate the judgment in the Eilert case. They finally settled on a new figure of $25,000, but appellant never paid that agreed upon amount. Attorney Speweik testified that on March 2, 2012, appellant called his office and spoke with his receptionist Linda Kuhlman about the lien. Kuhlman relayed that conversation to Speweik, who instructed her to tell appellant that he would not remove the lien until the judgment was paid.

{¶ 14} Finally, Cindy Hofner, the Wood County Clerk of Courts, testified. She testified as to the validity of the judgment liens filed against appellant in her office and stated that so long as a lien is of record and is valid, the case is still active. Hofner further testified that if a forged release of lien was successfully filed, it would corrupt the outcome of the case because the court records would then show there was no longer a judgment and the prevailing party would be prevented from collecting on a debt.

{¶ 15} At the conclusion of the state's case, appellant moved for an acquittal pursuant to Crim.R. 29. Appellant argued that the state had failed to prove jurisdiction and venue in that there was no testimony or evidence that any of the releases had been forged in Wood County or that any documents had been tampered with in Wood County.

7.

Appellant further argued that because no original document had been presented, the evidence was insufficient to support the forgery charges. The court denied the motion and appellant did not put on a defense.

{¶ 16} Subsequently, the jury returned verdicts of guilty on all charges and the court sentenced him as stated above.

{¶ 17} In his first and second assignments of error, appellant asserts that the lower court erred in denying his motion for acquittal. Appellant asserts that there was no evidence submitted at the trial below that any element of the offenses was committed in Wood County. Accordingly, appellant contends that the state failed to prove venue. In addition, appellant asserts that because there was no evidence that appellant presented or uttered an *original* document to anyone, the court erred in denying his motion for acquittal on the forgery charges.

{¶ 18} We review a ruling on a Crim.R. 29(A) motion under the same standard used to determine whether the evidence was sufficient to sustain a conviction. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 40. Under the sufficiency standard, we must determine whether the evidence admitted at trial, "if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d

8.

259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

{¶ 19} On the issue of venue, the Ohio Constitution guarantees the right of the accused to have a "trial by an impartial jury of the county in which the offense is alleged to have been committed." Ohio Constitution, Article I, Section 10. The Ohio Revised Code also guarantees that right by requiring that a criminal trial "shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." R.C. 2901.12(A). R.C. 2901.12 further provides:

> (H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:
>
> (1) The offenses involved the same victim, or victims of the same type or from the same group.
>
> * * *
>
> (2) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

9.

* * *

(5) The offenses involved the same or a similar modus operandi.

* * *

(I)(1) When the offense involves a computer, computer system, computer network, telecommunication, telecommunications device, telecommunications service, or information service, the offender may be tried in any jurisdiction containing any location of the computer, computer system, or computer network of the victim of the offense, in any jurisdiction from which or into which, as part of the offense, any writing, data, or image is disseminated or transmitted by means of a computer, computer system, computer network, telecommunication, telecommunications device, telecommunications service, or information service, or in any jurisdiction in which the alleged offender commits any activity that is an essential part of the offense.

{¶ 20} Although venue is not an essential element of a crime, it still is a fact that must be proved at trial unless waived. *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983). While it is not necessary that the venue of a crime be stated in express terms, it is essential that it be proven by all the facts and circumstances, beyond a reasonable doubt, that the crime was in fact committed in the county and state alleged. *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969 (1907), paragraph one of the syllabus.

10.

Finally, the trial court had broad discretion to determine the facts which could establish venue. *Toledo v. Taberner*, 61 Ohio App.3d 791, 793, 573 N.E.2d 1173 (6th Dist.1989).

{¶ 21} The forgery statute, R.C. 2913.31, reads in relevant part:

(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:

* * *

(3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged.

{¶ 22} As used in the forgery statute, the term "utter" means "to issue, publish, transfer, use, put or send into circulation, deliver, or display." R.C. 2913.01(H).

{¶ 23} The evidence presented at the trial below was clear. Appellant forged documents in an attempt to obtain releases of liens that had been filed against him in Wood County. He then transferred, delivered and/or sent into circulation those documents by emailing them to the title agent in an attempt to establish that the liens had been lifted. The title agent submitted the releases to the Wood County Clerk of Court to determine if they were proper as to form. When appellant was notified that one of the releases was not proper, he was aware that they had been "uttered" on his behalf in Wood County. With this knowledge, he forged a fourth release, including the notary signature and seal of a notary in Wood County, and emailed it to the title agent knowing it too would be submitted to Wood County for approval. Thus, he "uttered" it as well. Appellant's actions were part of a course of criminal conduct involving the same type of

11.

victim (his creditors), were committed in furtherance of the same purpose (the elimination of judgment liens against him in Wood County), and with the same modus operandi. Accordingly, venue in Wood County was proper as to the forgery charges.

{¶ 24} Appellant further asserts that the lower court erred in failing to grant his motion for acquittal on the forgery charges because there was no evidence that appellant presented or uttered an original document. That is, appellant contends that because the purported releases were basically cut and paste jobs that the Wood County Clerk of Court would not have filed, they are not forgeries as that term is used in the statute.

{¶ 25} As stated above, the forgery statute provides that "no person, with purpose to defraud, * * * shall * * * utter, or possess with purpose to utter, any writing that the person knows to have been forged." R.C. 2913.31(A)(3). A "writing" for purposes of the forgery statute means "any computer software, document, letter, memorandum, note, paper, plate, data, film, or other thing having in or upon it any written, typewritten, or printed matter, and any token, stamp, seal, credit card, badge, trademark, label, or other symbol of value, right, privilege, license, or identification." R.C. 2913.01(F). To "forge" means "to fabricate or create, in whole or in part and by any means, any spurious writing, or to make, execute, alter, complete, reproduce, or otherwise purport to authenticate any writing, when the writing in fact is not authenticated by that conduct." R.C. 2913.01(G).

{¶ 26} The evidence presented at the trial below established that appellant created writings as defined by R.C. 2913.01(F), and transferred them with the purpose to defraud. In addition, the writings were clearly forgeries as defined by R.C. 2913.01(G). The

12.

statute does not require that appellant succeed in his attempt to defraud. It simply requires that it was his purpose to defraud. The lower court properly denied the motion for acquittal of the forgery charges.

{¶ 27} With regard to the tampering charges, appellant was charged with four counts in violation of R.C. 2921.12(A)(2), which reads:

(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

* * *

(2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation.

{¶ 28} The evidence was clear that appellant knew several official proceedings against him were in progress in Wood County. In mid-March he entered the Wood County Clerk of Court's office and inquired about the then existing liens against him. With that knowledge, appellant created false documents with the purpose to mislead a public official, the Wood County Clerk of Courts, and corrupt the outcome of those Wood County proceedings. The lower court did not err in finding Wood County to be a proper venue for the prosecution of those offenses and in denying the motion for acquittal.

13.

{¶ 29} The first and second assignments of error are not well-taken,

{¶ 30} In his third assignment of error, appellant contends that his convictions were against the manifest weight of the evidence.

{¶ 31} A manifest weight of the evidence challenge questions whether the state has met its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 387. In making this determination, the court of appeals sits as a "thirteenth juror" and, after

"reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 32} Appellant was convicted of four counts of forgery and four counts of tampering with evidence. The counts all relate to the actions appellant took in creating the four forged releases and using them in an attempt to remove the liens against him without paying the judgments. Upon review of the trial court record, as discussed above, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice requiring reversal. The third assignment of error is not well-taken.

14.

**{¶ 33}** On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Wood County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.       _____
                      JUDGE

Thomas J. Osowik, J.

                      _____
James D. Jensen, J.         JUDGE
CONCUR.

                      _____
                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.